BRENTEN GEORGE and DENISE VALENTE-McGEE, individually and on behalf of similarly situated individuals,

        Plaintiffs

  v.

CNH HEALTH & WELFARE BENEFIT PLAN, CNH EMPLOYEE GROUP INSURANCE PLAN, CASE NEW HOLLAND, INC., and BLUE CROSS BLUE SHIELD OF WISCONSIN,

        Defendants.

Case No.

# CLASS ACTION COMPLAINT

Plaintiffs Brenten George and Denise Valente-McGee ("Plaintiffs"), individually and on behalf of all persons similarly situated, as and for their complaint against Defendants CNH Health & Welfare Benefit Plan, CNH Employee Group Insurance Plan, Case New Holland, Inc. and Blue Cross Blue Shield of Wisconsin d/b/a Anthem Blue Cross Blue Shield, allege and state as follows:

## INTRODUCTION

1. Plaintiffs Brenten George and Denise Valente-McGee are participants in ERISA-governed employee benefit plans sponsored by Case New Holland, Inc. (the "Plans"). The Plans provide health and medical benefits to thousands of covered participants and beneficiaries, including coverage for in-network and out-of-network medical providers. The Plans state that

reimbursement for out-of-network benefits will be paid at a percentage of "Reasonable" charges. Both Plans define "Reasonable" in relevant part as:

> The charge for a service or a supply which is *the lower of the provider's usual charge or the prevailing charge in the geographic area* where it is furnished - as determined by the claims administrator. The claims administrator takes into account the complexity, degree of skill needed, type or specialty of the provider, range of services provided by a facility, and the prevailing charge in other areas.

(emphasis added). Blue Cross Blue Shield of Wisconsin, doing business as Anthem Blue Cross Blue Shield (hereinafter "Anthem"), is the claims administrator for the Plans.

2. Under the Plans, out-of-network claims differ from in-network claims in several important ways, including that participants are personally responsible to the medical provider for any amount that remains unpaid after the out-of-network charges are processed. If the Plans underpay out-of-network claims, participants are harmed directly (dollar-for-dollar) because they are responsible for the unpaid difference.

3. Both Plaintiffs received surgical services covered by their respective Plans from an out-of-network provider. Anthem determined that the allowable amount was about 20% of their physicians' billed charges. The amount that Anthem decided was allowable was tens of thousands of dollars less than the prevailing charges in the geographic area, as determined by using objective charge data found in the nationally recognized FAIR Health database.

4. Both George and Valente-McGee appealed the low payments. In response to the appeals, Anthem advised that Case New Holland, Inc. ("CNH") had directed it to use a different methodology for out-of-network claims than the language found in the Plans. Instead of basing a methodology on *the prevailing charge in the geographic area*, CNH directed Anthem to re-price all out-of-network claims using a *percentage of Medicare reimbursement rates*.

5. Plaintiffs appealed directly to the CNH Benefits Committee, advising that the methodology used to determine the reimbursement level for their out-of-network claims was contrary to the terms of their Plans. CNH rejected the appeal and stated that its Medicare-based methodology based on "relative values" was close enough to provider "prevailing charges" not to be arbitrary and capricious. Medicare allowable rates, however, are neither based on billed charges nor the prevailing charges in the geographical area in which they are furnished. In fact, current Medicare allowable amounts have no relationship whatsoever to the prevailing charge by providers.

6. Defendants knowingly and systematically used improper payment methodology to process all out-of-network claims for at least six years in violation of their fiduciary obligations to Plaintiffs and all other participants and beneficiaries of the Plans. Defendants' use of a Medicare-based payment methodology for out-of-network claims violates the terms of the Plaintiffs' benefits Plans.

7. Plaintiffs bring these class claims against Defendants under 29 U.S.C. § 1132(a), also known as ERISA § 502(a), to recover benefits wrongfully denied, to remove Anthem as claims administrator, to enjoin Defendants from utilizing their improper practices going forward, and to obtain other appropriate equitable relief to redress Defendants' violations.

**PARTIES**

8. Plaintiff Brenten George is an hourly employee at Case New Holland, Inc. He is a resident of Kenosha, Wisconsin and is a participant in the CNH Health & Welfare Benefit Plan as a member of the UAW Active and Non-Grandfathered Retiree Benefit Group.

9. Plaintiff Denise Valente-McGee is the spouse of a retired employee from Case New Holland, Inc. She is a resident of Racine, Wisconsin and is a beneficiary of the CNH Employee Group Insurance Plan as a member of the UAW Grandfathered Retiree Benefit Group.

10. Defendant CNH Health & Welfare Benefit Plan (Plan I) is an ERISA plan administered in Racine, Wisconsin that provides benefits to thousands of individuals, including Brenten George.

11. CNH Employee Group Insurance Plan (Plan II) is an ERISA plan administered in Racine, Wisconsin that provides benefits to thousands of individuals including Denise Valente-McGee.

12. Case New Holland, Inc. ("CNH") is the named ERISA fiduciary for Plan I and Plan II (collectively, the "Plans") and administers the Plans in Racine, Wisconsin.

13. Blue Cross Blue Shield of Wisconsin d/b/a Anthem Blue Cross Blue Shield ("Anthem") is a Wisconsin insurance corporation with its principal place of business in Waukesha, Wisconsin. Anthem is the claims administrator and has discretionary authority in the administration of the Plans.

**JURISDICTION AND VENUE**

14. The Employee Retirement Income Security Act of 1974, as amended ("ERISA"), provides for federal jurisdiction over the claims for relief in this complaint pursuant to 28 U.S.C. § 1331.

15. Venue is proper in this judicial district because all Defendants' principal places of business are in this district, Plaintiffs reside in and have received benefits from the Plans in this district, and Defendants' improper conduct described herein occurred in this district.

# FACTS

16. Plaintiffs are participants in the Plans.

17. The Plans provide health and medical benefits to covered participants and beneficiaries.

18. The Plans provide benefits for in-network and out-of-network medical providers.

19. The Plans state that reimbursement for out-of-network benefits will be paid at a percentage of "Reasonable" charges.

20. Both Plans define "Reasonable" in relevant part as: "The charge for a service or a supply which is the lower of *the provider's usual **charge** or the prevailing **charge** in the geographic area* where it is furnished - as determined by the claims administrator. The claims administrator takes into account the complexity, degree of skill needed, type or specialty of the provider, range of services provided by a facility, and the prevailing charge in other areas." (emphasis added).

21. CNH is the plan sponsor and plan administrator for both Plans. CNH is a named ERISA fiduciary for both Plans.

22. Anthem is the claims administrator for both Plans. Anthem is an ERISA fiduciary because the Plans grant it discretion to determine the amount of reimbursement for out-of-network providers as restricted by the language in the Plans.

23. Under the Plans, out-of-network claims differ from in-network claims in several important ways, including that participants are personally responsible to the medical providers for any amount that remains unpaid from the Plan with respect to out-of-network claims. If the Plan underpays out-of-network claims, participants are harmed directly dollar-for-dollar because they are responsible for the unpaid difference.

24. Both Plaintiffs received surgical services covered by their respective Plans from an out-of-network provider.

25. Plaintiff George's provider charged $78,637.54 for the covered services. Anthem determined that the reasonable charge was $16,920.76, only 21.5% of the charges, leaving George with a balance due of $61,716.78.

26. Plaintiff Valente-McGee's primary surgeon charged $105,663 over two dates of service. Anthem determined that the reasonable charge was $19,312.32, only 18.2% of the charges, leaving Valente-McGee with a balance of $86,350.68 due to her primary surgeon.

27. Objective provider charge data exists. Insurers created FAIR Health, Inc. in October 2009 as part of the settlement of investigations and lawsuits challenging health insurance industry out-of-network reimbursement practices based on a database called Ingenix MDR.

28. FAIR Health, Inc. created a transparent source of charge data to support the adjudication of healthcare claims and to promote sound decision-making by all participants in the healthcare industry.

29. The FAIR Health data is based on provider charges by geographic region. FAIR Health's mission is to fulfill the mandate incorporated in the 2009 settlement. It is an objective third party source for determining average provider charges.

30. Using certain reasonable variables, the FAIR Health database mode for the surgical CPT codes for George shows the prevailing charge was $51,591.05.

31. Using certain reasonable variables, the FAIR Health database mode for the CPT codes for Valente-McGee shows the prevailing charge was $81,642.25.

32. Plaintiffs timely appealed the low payments determined by Anthem and provided the FAIR Health data to Anthem.

33. In response to the appeals, Anthem advised that CNH had directed it to use a different methodology for out-of-network claims rather than the charge-based language found in the Plans. Instead of basing a methodology on "the prevailing charge," CNH directed Anthem to re-price all out-of-network claims using a *percentage of Medicare reimbursement rates*.

34. Using a percentage of Medicare reimbursement rates as the basis for determining out–of-network payments is contrary to the terms of the Plans.

35. Plaintiffs appealed directly to the CNH Benefit Committee with the FAIR Health data and disclosed the improper arrangement between CNH and Anthem.

36. The CNH Benefits Committee responded through counsel representing CNH. CNH explained that "[p]rior to 2009, the determination of 'reasonable charge' under the Plans was made with reference to the Ingenix MDR database. In 2009, however, UnitedHealth Group, owner of the Ingenix database, shut down Ingenix because it systematically underpaid out of network claims."

37. CNH stated that "[t]he shutdown of Ingenix forced insurers and self-funded plans to adopt other methodologies to determine 'reasonable charges' for payment of [out-of-network] plan benefits."

38. This is not true for the CNH Plans. CNH could have simply used the new FAIR Health database in place of the flawed Ingenix database. This would have satisfied the Plan's requirement to use *the prevailing charge in the geographic region* as the basis for determining how much to pay for claims by out-of-network providers.

39. CNH never amended the language in the Plans about how to determine "reasonable" charges for out-of-network claims before it adopted "other methodologies to determine 'reasonable charges' for payment of [out-of-network] benefits."

40. CNH advised Plaintiffs in response to their appeal that "[s]hortly after the Ingenix database closed, Anthem offered CNH the option of basing 'reasonable charges' on local plan pricing (i.e. local network fees) or a percentage of the Medicare Fee Schedule."

41. Despite the fact that other insurers and plans stopped using the Ingenix database because it was flawed and, as CNH admits, Ingenix "systematically underpaid out of network claims," CNH advised Plaintiffs that it chose to use a percentage of the Medicare Fee Schedule "because it most closely approximated the level of 'reasonable charges' as determined under the Ingenix database."

42. CNH advised Plaintiffs in October 2015 that "[t]he Plan has continued to use this methodology to the present."

43. Medicare allowable rates are neither based on billed charges nor the prevailing charges in the geographical area in which they are furnished.

44. Current Medicare allowable amounts have no relationship to the prevailing charge by providers.

45. Instead of following the language in the Plans to determine amounts to pay for out-of-network claims, Anthem followed CNH's instruction to use "other methodologies" that would continue to allow CNH, as employer, funder, plan sponsor, and plan administrator, and Anthem as claims administrator, to knowingly underpay out-of-network claims.

46. The decisions of CNH and Anthem to use a methodology for out-of-network claims that is not based on the provider charge directly harms participants and beneficiaries when

the adopted methodology underpays claims. Unlike in-network claims, participants and beneficiaries of the Plans are responsible for the balance of the out-of-network providers' bills.

47. Plaintiffs confronted CNH with the fact it had instructed its claims administrator to use an improper method to determine out-of-network benefits.

48. CNH issued a final adverse determination upholding payment based on methodology that is contrary to the terms of the Plans.

49. Defendants entered into an improper arrangement to pay out-of-network claims using a methodology that is contrary to the terms of the Plans.

50. Defendants knowingly and systematically used an improper payment methodology for out-of-network claims in violation of the terms of the Plans and in violation of their fiduciary obligations to Plaintiffs.

51. Defendants' improper actions harmed Plaintiffs and all other Plan participants and beneficiaries of the Plans when, like here, the Medicare-based rate paid by the Plans is less than the prevailing charge for similar providers in the same geographic region.

## CLASS ALLEGATIONS

52. Defendants are similarly situated to all other participants and beneficiaries of the Plans who submitted out-of-network claims following Defendants' adoption of the "other methodology" based on Medicare rates in 2009.

53. Defendants used the same Medicare-based payment methodology to pay all out-of-network claims under the Plans.

54. As such, pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring their claims on behalf of the following class:

> All individuals who were participants or beneficiaries in one or more CNH employee benefit plans for which Anthem has served as the claims administrator

for out–of-network claims within six years of the filing of this Class Action Complaint (hereinafter "the Class").

55. The members of the Class may be readily determined through the use of information contained in Anthem's and CNH's possession because these Defendants know who filed out-of-network claims, the billing codes for the services, the identity of the providers, the amount of the billed charges, and how much the Plans paid on each out-of-network claim. In fact, most or all of this information will be found on the explanation of benefit forms prepared by Anthem for each out-of-network claim.

56. There are so many persons within the proposed Class that joinder is impracticable. It is believed that there are hundreds or thousands of members of the Class.

57. Class certification is appropriate because there are questions of law and fact common to all members of the Class and those common questions predominate over any questions that may affect individual Class members. The common questions include, *inter alia*, the following:

   a. The nature of the legal duties, fiduciary or otherwise, owed by the Defendants to the Plaintiffs and other members of the Class;

   b. Whether one or more of the Defendants are fiduciaries under ERISA and, if so, whether they breached fiduciary duties owed to members of the Class;

   c. Whether Defendants violated the terms of the Plans by using a Medicare-based payment methodology, rather than a charge-based methodology, when determining whether the out-of-network providers charges were reasonable; and

   d. The appropriate legal and equitable relief available to Plaintiffs and other Class members with respect to the legal claims alleged in this case.

58. Certification is desirable and proper because Plaintiff's claims are typical of the claims of the members of the Class that Plaintiffs seek to represent. All of the claims at issue arise from the same unlawful conduct arising from Defendants' improper handling of out-of-network claims, and Plaintiffs have the same interests as the members of the proposed Class.

59. Certification is also desirable and proper because Plaintiffs will fairly and adequately protect the interests of the classes they seek to represent. There are no conflicts between the interests of Plaintiffs and those of other members of the Class, and Plaintiffs are cognizant of their duties and responsibilities to the entire class. Plaintiffs' attorneys are qualified and experienced and able to conduct the proposed class action litigation under ERISA and any other applicable legal theories.

60. It is desirable to determine the claims of all members of the Class in a single forum, and a single proceeding would be a fair and efficient means of resolving issues related to this litigation between Defendants and the participants and beneficiaries of the Plans. The prosecution of separate actions by individual members of the proposed Class would create the risk of inconsistent or varying adjudications with respect to the claims alleged herein.

61. Any difficulties in managing this litigation as a class action are manageable, especially when weighed against the difficulty of affording adequate relief to the members of the Class through numerous separate ERISA actions in federal court.

62. This case may be maintained as a class action under Rule 23. All of the prerequisites for class certification are satisfied.

### COUNT I - VIOLATION OF FIDUCIARY OBLIGATIONS

63. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

64. This count is brought pursuant to 29 U.S.C. § 1132(a).

65. CNH is the plan administrator and is a named fiduciary of the Plans.

66. The Plans grant Anthem discretion to determine "reasonable" charges and Anthem is a fiduciary when determining how much to pay for out-of-network claims.

67. As ERISA fiduciaries, Defendants owe Plaintiffs and members of the Class a variety of fiduciary duties, including duties not to engage in self-dealing, to avoid conflicts of interest, to administer the Plans solely in the interest of the participants and beneficiaries, and to make claim and payment decisions in accordance with the terms of the Plans.

68. In violation of their fiduciary duties, Defendants developed practices and policies that improperly administered out-of-network claims contrary to the terms of the Plans.

69. Defendants' admitted purpose in the improper scheme was "to most closely approximate" what CNH paid to out-of-network providers under the flawed Ingenix database that Defendants knew "systematically underpaid out of network claims."

70. Defendants knew that adopting any methodology that most closely approximated Ingenix would result in systematic underpayment of out–of-network claims thereby harming members of the Class by leaving them with a larger balance to pay the out-of-network provider.

71. Defendants unlawfully favored their own financial interests over the rights and interests of the members of the Class, who are entitled to payment of out-of-network claims based on a prevailing provider charge methodology.

72. Plaintiffs and members of the class were harmed by Defendants' breaches of fiduciary duty.

## COUNT II - IMPROPER DENIAL OF BENEFITS

73. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

74. This count is brought pursuant to 29 U.S.C. § 1132(a).

75. Defendants wrongfully denied the claims submitted by Plaintiffs and other members of the Class based on the improper payment of out-of-network claims contrary to the terms of the Plans.

76. Plaintiffs exhausted any and all appeals available to them under the Plans, such that they are entitled to bring this lawsuit on behalf of themselves and the Class.

77. Plaintiffs and members of the Class were harmed by Defendants' conduct.

## COUNT III - INJUNCTIVE AND DECLARATORY RELIEF

78. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

79. This count is brought pursuant to 29 U.S.C. § 1132(a).

80. Plaintiffs made Defendants aware that their agreement to administer out of network claims using a Medicare-based methodology violated the terms of the Plans.

81. Instead of changing their conduct to follow the terms of the Plans, Defendants refused to change and continue their improper conduct.

82. Defendants must be enjoined from their wrongful actions in violating the terms of the Plans.

83. Plaintiff Brenten George continues to be a participant under Plan I, and Plaintiff Denise Valente-McGee continues to be a beneficiary under Plan II.

84. Plaintiffs seek all appropriate equitable relief, including but not limited to declaratory relief, to ensure that Defendants comply with their obligations under ERISA and applicable law, together with any other supplemental relief necessary to redress the harm caused to Plaintiffs and other members of the Class.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs request judgment in their favor:

A. An order certifying the Class;

B. An order appointing Plaintiffs as class representatives for the class;

C. An order designating O'Neil, Cannon, Hollman, DeJong & Laing S.C. and Tuffnell Law, S.C. as counsel for the Class;

D. For benefits due;

E. For a permanent injunction requiring CNH and Anthem to cease the improper payment practice described in the complaint and to comply with their obligations under ERISA and applicable law;

F. Ordering Anthem or a substitute claims administrator to recalculate the out-of-network claims submitted under the Plans using an objective and fair methodology based on provider charges like Fair Health;

G. Ordering CNH and the Plans to disgorge all amounts improperly kept and to pay any underpaid amounts as determined after the recalculation of the out-of-network claims using a proper provider charge-based methodology;

H. Prohibiting Anthem or CNH from further serving as fiduciaries under the Plans and appointing successor fiduciaries due to their willful, collusive, and deliberate fiduciary breaches;

I. Awarding Plaintiffs' disbursements and expenses for this action, including reasonable attorney fees;

J. Awarding taxable costs and interest from the date of initial improper benefit determination for all underpaid amounts;

K.  Other and further relief that is determined to be equitable or otherwise just and proper under the circumstances presented by this case.

Dated: December 19, 2016.

**TUFFNELL LAW S.C.**
Attorneys for Plaintiffs Brenten George and Denise Valente-McGee


 /s/John B. Tuffnell
John B. Tuffnell
Wis Bar No. 1046542
788 N. Jefferson St., Suite 900
Milwaukee, WI 53202
jbt@tuff-law.com
(414) 550-2296

**O'NEIL CANNON HOLLMAN DEJONG & LAING S.C.**
Attorneys for Plaintiffs Brenten George and Denise Valente-McGee


 /s/ Douglas P. Dehler
Douglas Dehler
Wis Bar No.: 1000732
Christa Wittenberg
Wis Bar No.: 1096703
111 East Wisconsin Avenue, Suite 1400
Milwaukee, WI 53202
douglas.dehler@wilaw.com
christa.wittenberg@wilaw.com
(414) 276-5000