UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BRENTEN GEORGE and DENISE VALENTE-McGEE, individually and on behalf of similarly situated individuals,

    Plaintiffs

    v.

Case No. 16-CV-1678

CNH HEALTH & WELFARE PLAN,
CNH EMPLOYEE GROUP INSURANCE PLAN,
CASE NEW HOLLAND, INC., and BLUE CROSS BLUE SHIELD OF WISCONSIN,

    Defendants.

---

## CLASS ACTION AMENDED COMPLAINT

---

Plaintiffs Brenten George and Denise Valente-McGee ("Plaintiffs"), individually and on behalf of all persons similarly situated, as and for their complaint against Defendants CNH Health & Welfare Plan, CNH Employee Group Insurance Plan, Case New Holland, Inc. and Blue Cross Blue Shield of Wisconsin d/b/a Anthem Blue Cross Blue Shield, allege and state as follows:

### INTRODUCTION

1. Plaintiffs Brenten George and Denise Valente-McGee are participants in ERISA-governed employee benefit plans sponsored by Case New Holland, Inc. ("CNH"). These plans provide health and medical benefits to thousands of covered participants and beneficiaries, including coverage for in-network and out-of-network medical providers. The plan documents

1

state that reimbursement for out-of-network treatment will be paid at a percentage of "Reasonable" charges. The plan documents define "Reasonable" in relevant part as:

> The charge for a service or a supply which is *the lower of the provider's usual charge or the prevailing charge in the geographic area* where it is furnished - as determined by the claims administrator. The claims administrator takes into account the complexity, degree of skill needed, type or specialty of the provider, range of services provided by a facility, and the prevailing charge in other areas.

(emphasis added). Blue Cross Blue Shield of Wisconsin, doing business as Anthem Blue Cross Blue Shield (hereinafter "Anthem"), is the claims administrator for these plans.

2. Under the CNH benefit plans at issue, out-of-network claims differ from in-network claims in several important ways, including that participants are personally responsible to the medical provider for any amount that remains unpaid after the out-of-network charges are processed. If the plans underpay out-of-network claims, participants are harmed directly (dollar-for-dollar) because they are responsible for the unpaid difference.

3. Both Plaintiffs received surgical services covered by their respective benefit plans from an out-of-network provider. Anthem determined that the allowable amount was about 20% of their physicians' billed charges. The amount that Anthem decided was allowable was tens of thousands of dollars less than the prevailing charges in the geographic area, as determined using objective charge data found in the nationally recognized FAIR Health database.

4. Both George and Valente-McGee appealed the low payments. In response to the appeals, Anthem advised that CNH had directed it to use a methodology for out-of-network claims that was different from what the plan language required. Instead of basing a methodology on *the prevailing charge in the geographic area*, CNH directed Anthem to re-price all out-of-network claims using a *percentage of Medicare's reimbursement rates*.

5. Plaintiffs and their representatives appealed directly to the CNH Benefits Committee, advising that the methodology used to determine the reimbursement level for their out-of-network claims was contrary to the terms of their benefit plans. CNH rejected the appeals and stated that its Medicare-based methodology based on "relative values" was close enough to provider "prevailing charges" not to be arbitrary and capricious. Medicare's reimbursement rates, however, are neither based on billed charges nor the prevailing charges in the geographical area in which they are furnished. In fact, current Medicare reimbursement rates have no relationship whatsoever to the prevailing charge by providers.

6. Defendants knowingly and systematically used an improper payment methodology to process all out-of-network claims for at least six years in violation of their fiduciary obligations to Plaintiffs and all other participants and beneficiaries of the benefit plans sponsored by CNH. Defendants' use of a Medicare-based payment methodology for out-of-network claims violates the terms of the Plaintiffs' benefit plans.

7. Plaintiffs bring these class claims against Defendants under 29 U.S.C. § 1132(a), also known as ERISA § 502(a), to require a reprocessing of out-of-network claims using a proper methodology, to recover benefits wrongfully denied, to remove Anthem as claims administrator, to enjoin Defendants from utilizing their improper practices going forward, and to obtain other appropriate equitable relief to redress Defendants' violations.

**PARTIES**

8. Plaintiff Brenten George is an hourly employee at Case New Holland, Inc. He is a resident of Kenosha, Wisconsin and is a participant in the CNH Health & Welfare Plan as a member of the UAW Active and Non-Grandfathered Retiree Benefit Group.

9. Plaintiff Denise Valente-McGee is the spouse of a retired employee from Case New Holland, Inc. She is a resident of Racine, Wisconsin and is a beneficiary of the CNH Employee Group Insurance Plan as a member of the UAW Grandfathered Retiree Benefit Group.

10. Defendant CNH Health & Welfare Plan is an ERISA plan administered in Racine, Wisconsin that provides benefits to thousands of individuals, including Brenten George. Upon information and belief, the formal name of this plan may now be the CNH Industrial U.S. Health & Welfare Plan.

11. Defendant CNH Employee Group Insurance Plan is an ERISA plan administered in Racine, Wisconsin that provides benefits to thousands of individuals, including Denise Valente-McGee.

12. Upon information and belief, the CNH Employee Group Insurance Plan merged with the CNH Health & Welfare Plan. Hereafter, these two merged plans are collectively referred to as the "Plan."

13. Defendant Case New Holland, Inc. ("CNH") is the named ERISA fiduciary for the Plan and administers the Plan in Racine, Wisconsin.

14. Defendant Blue Cross Blue Shield of Wisconsin d/b/a Anthem Blue Cross Blue Shield ("Anthem") is a Wisconsin insurance corporation with its principal place of business in Waukesha, Wisconsin. Anthem is the claims administrator for the Plan and has discretionary authority in the administration of the Plan.

**JURISDICTION AND VENUE**

15. The Employee Retirement Income Security Act of 1974, as amended ("ERISA"), provides for federal jurisdiction over the claims for relief in this complaint pursuant to 28 U.S.C. § 1331.

4

16. Venue is proper in this judicial district because all Defendants' principal places of business are in this district, Plaintiffs reside in and have received benefits from the Plan in this district, and Defendants' improper conduct described herein occurred in this district.

**FACTS**

17. Plaintiff George is a participant in, and Plaintiff Valente-McGee is a dependent covered under, the Plan.

18. The Plan provides health and medical benefits to covered participants and beneficiaries.

19. The Plan provides benefits for treatment from in-network and out-of-network medical providers.

20. The Plan documents state that reimbursement for out-of-network benefits will be paid at a percentage of "Reasonable" charges.

21. The Plan documents define "Reasonable" in relevant part as: "The charge for a service or a supply which is the lower of *the provider's usual **charge** or the prevailing **charge** in the geographic area* where it is furnished - as determined by the claims administrator. The claims administrator takes into account the complexity, degree of skill needed, type or specialty of the provider, range of services provided by a facility, and the prevailing charge in other areas." (emphasis added).

22. CNH is the plan sponsor and plan administrator for the Plan, as well as a named ERISA fiduciary for the Plan.

23. Anthem is the claims administrator for the Plan. Anthem is an ERISA fiduciary because the Plan grants it discretion to determine the amount of reimbursement for out-of-network providers as restricted by the language in the Plan.

5

24. Under the Plan, out-of-network claims differ from in-network claims in several important ways, including that participants are responsible to the medical providers for any amount that remains unpaid from the Plan with respect to out-of-network claims. If the Plan underpays out-of-network claims, participants are harmed directly dollar-for-dollar because they are responsible for the unpaid difference.

25. Both Plaintiffs received surgical services covered by the Plan from an out-of-network provider.

26. Plaintiff George's provider charged $78,637.54 for the covered services. The amount Anthem allowed was $16,920.76, only 21.5% of the charges, leaving George with a balance due of $61,716.78.

27. Plaintiff Valente-McGee's primary surgeon charged $105,663 over two dates of service. The amount Anthem allowed was $19,312.32, only 18.2% of the charges, leaving Valente-McGee with a balance of $86,350.68 due to her primary surgeon.

28. Objective provider charge data exists. Insurers created FAIR Health, Inc. in October 2009 as part of the settlement of investigations and lawsuits challenging health insurance industry out-of-network reimbursement practices based on a database called Ingenix MDR.

29. FAIR Health, Inc. created a transparent source of charge data to support the adjudication of healthcare claims and to promote sound decision-making by all participants in the healthcare industry.

30. The FAIR Health data is based on provider charges by geographic region. FAIR Health's mission is to fulfill the mandate incorporated in the 2009 settlement. It is an objective third-party source for determining average provider charges.

31. Using certain reasonable variables, the FAIR Health database mode for the surgical CPT codes for George shows the prevailing charge was $51,591.05.

32. Using certain reasonable variables, the FAIR Health database mode for the CPT codes for Valente-McGee shows the prevailing charge was $81,642.25.

33. Plaintiffs and their representatives timely appealed the low payments determined by Anthem and provided the FAIR Health data to Anthem.

34. In response to the appeals, Anthem advised that CNH had directed it to use a different methodology for out-of-network claims rather than the charge-based language found in the Plan. Instead of basing a methodology on "the prevailing charge," CNH directed Anthem to re-price all out-of-network claims using a percentage of Medicare's reimbursement rates.

35. Using a percentage of Medicare's reimbursement rates as the basis for determining out-of-network payments is contrary to the terms of the Plan.

36. Plaintiffs appealed directly to the CNH Benefit Committee with the FAIR Health data and disclosed the improper arrangement between CNH and Anthem.

37. The CNH Benefits Committee responded through counsel representing CNH, who explained that "[p]rior to 2009, the determination of 'reasonable charge' under the Plans was made with reference to the Ingenix MDR database. In 2009, however, UnitedHealth Group, owner of the Ingenix database, shut down Ingenix because it systematically underpaid out of network claims."

38. CNH stated that "[t]he shutdown of Ingenix forced insurers and self-funded plans to adopt other methodologies to determine 'reasonable charges' for payment of [out-of-network] plan benefits."

39. This is not true for the Plan. Among other options, CNH could have simply used the new FAIR Health database in place of the flawed Ingenix database.

40. The FAIR Health database provides data showing the prevailing charge in a geographic region for medical services.

41. CNH adopted "other methodologies to determine 'reasonable charges' for payment of [out-of-network] benefits"—Medicare's reimbursement rates—without amending the Plan document provisions about how to determine "reasonable" charges for out-of-network claims.

42. CNH advised Plaintiffs in response to their appeal that "[s]hortly after the Ingenix database closed, Anthem offered CNH the option of basing 'reasonable charges' on local plan pricing (i.e. local network fees) or a percentage of the Medicare Fee Schedule."

43. Despite the fact that other insurers and plans stopped using the Ingenix database because it was flawed and, as CNH admits, Ingenix "systematically underpaid out of network claims," CNH advised Plaintiffs that it chose to use a percentage of the Medicare Fee Schedule "because it most closely approximated the level of 'reasonable charges' as determined under the Ingenix database."

44. CNH advised Plaintiffs in October 2015 that "[t]he Plan has continued to use this methodology to the present."

45. Medicare's reimbursement rates are neither based on billed charges nor the prevailing charges in the geographical area in which they are furnished.

46. Medicare's current reimbursement rates have no relationship to the prevailing charge by providers.

8

47. Instead of following the language in the Plan documents to determine amounts to pay for out-of-network claims, Anthem followed CNH's instruction to use "other methodologies" that would continue to allow CNH, as employer, funder, plan sponsor, and plan administrator, and Anthem as claims administrator, to knowingly underpay out-of-network claims.

48. The decisions of CNH and Anthem to use a methodology to calculate payment for out-of-network claims that is not based on the provider charge directly harms participants and beneficiaries when the adopted methodology underpays claims. Unlike in-network claims, Plaintiffs and other participants and beneficiaries of the Plan are responsible for the balance of the out-of-network providers' bills.

49. Plaintiffs confronted CNH with the fact it had instructed its claims administrator to use an improper method to determine out-of-network benefits.

50. CNH issued a final adverse determination upholding payment based on a methodology that is contrary to the terms of the Plan.

51. Defendants entered into an improper arrangement to pay out-of-network claims using a methodology that is contrary to the terms of the Plan.

52. Defendants knowingly and systematically used an improper payment methodology for out-of-network claims in violation of the terms of the Plan and in violation of their fiduciary obligations to Plaintiffs.

53. Defendants' improper actions harmed Plaintiffs and all other Plan participants and beneficiaries when, like here, the Medicare-based rate paid by the Plan is less than the prevailing charge for similar providers in the same geographic region.

## CLASS ALLEGATIONS

54. Defendants are similarly situated to all other participants and beneficiaries of the Plan who submitted out-of-network claims following Defendants' adoption of the "other methodology" based on Medicare's reimbursement rates in 2009.

55. Defendants used the same Medicare-based payment methodology to pay out-of-network claims under the Plan.

56. As such, pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring their claims on behalf of the following class:

> All participants and beneficiaries of the CNH Health & Welfare Plan or the CNH Employee Group Insurance Plan whose out-of-network claims were paid based on Medicare's reimbursement rates at any time between December 19, 2010 and the present (hereinafter "the Class").

57. The members of the Class may be readily determined through the use of information in Anthem's and CNH's possession because these Defendants know all of the participants and beneficiaries who filed out-of-network claims.

58. There are so many persons within the proposed Class that joinder is impracticable. It is believed that there are hundreds or thousands of members of the Class.

59. Class certification is appropriate because there are questions of law and fact common to all members of the Class and those common questions predominate over any questions that may affect individual Class members. The common questions include, *inter alia*, the following:

   a. The nature of the legal duties, fiduciary or otherwise, owed by the Defendants to the Plaintiffs and other members of the Class;

   b. Whether one or more of the Defendants are fiduciaries under ERISA and, if so, whether they breached fiduciary duties owed to members of the Class;

      c. Whether Defendants violated the terms of the Plan by using a Medicare-based payment methodology, rather than a charge-based methodology, when assessing out-of-network claims; and

      d. The appropriate legal, declaratory, and equitable relief available to Plaintiffs and other Class members with respect to the claims alleged in this case.

60. Certification is desirable and proper because Plaintiffs' claims are typical of the claims of the members of the Class that Plaintiffs seek to represent. All of the claims at issue arise from the same unlawful course of conduct arising from Defendants' improper handling of out-of-network claims, and Plaintiffs have the same interests as the members of the proposed Class.

61. Certification is also desirable and proper because Plaintiffs will fairly and adequately protect the interests of the Class they seek to represent. There are no conflicts between the interests of Plaintiffs and those of other members of the Class, and Plaintiffs are cognizant of their duties and responsibilities to the entire Class. Plaintiffs' attorneys are qualified and experienced and able to conduct the proposed class action litigation under ERISA and any other applicable legal theories.

62. It is desirable to determine the claims of all members of the Class in a single forum, and a single proceeding would be a fair and efficient means of resolving issues related to this litigation between Defendants and the participants and beneficiaries of the Plan. The prosecution of separate actions by individual members of the proposed Class would create the risk of inconsistent or varying adjudications with respect to the claims alleged herein.

63. Any difficulties in managing this litigation as a class action are manageable, especially when weighed against the difficulty of affording adequate relief to the members of the Class through numerous separate ERISA actions in federal court.

64. This case may be maintained as a class action under Rule 23. All of the prerequisites for class certification are satisfied.

## COUNT I - VIOLATION OF FIDUCIARY OBLIGATIONS

65. Plaintiffs incorporate all other paragraphs in this Complaint as though fully set forth herein.

66. This count is brought pursuant to 29 U.S.C. § 1132(a)(2) and (3).

67. CNH is the plan administrator and is a named fiduciary of the Plan.

68. The Plan grants Anthem discretion to determine "reasonable" charges and Anthem is a fiduciary when determining how much to pay for out-of-network claims.

69. As ERISA fiduciaries, Defendants owe Plaintiffs and members of the Class a variety of fiduciary duties, including duties not to engage in self-dealing, to avoid conflicts of interest, to administer the Plan solely in the interest of the participants and beneficiaries, and to make claim and payment decisions in accordance with the terms of the Plan.

70. Defendants developed practices and policies that administered out-of-network claims contrary to the terms of the Plan.

71. CNH and Anthem are liable as co-fiduciaries under 29 U.S.C. § 1105 due to their knowing participation in the conduct described herein, their enabling each other to commit fiduciary breaches, and their knowledge of each other's breaches.

72. Defendants' admitted purpose in using Medicare's reimbursement rates was "to most closely approximate" what CNH paid to out-of-network providers under the flawed Ingenix database that Defendants knew "systematically underpaid out of network claims."

73. Defendants knew that adopting any methodology that most closely approximated Ingenix would result in systematic underpayment of out-of-network claims thereby harming members of the Class by leaving them with a larger balance due to the out-of-network provider.

74. Defendants favored their own financial interests over the rights and interests of the members of the Class, who are entitled to payment of out-of-network claims based on a prevailing provider charge methodology.

75. Plaintiffs and members of the class were harmed by Defendants' breaches of fiduciary duty and are entitled to appropriate equitable relief.

76. Defendants' breaches of their fiduciary duties are ongoing and should be enjoined for the benefit of the Plan, Plaintiffs and other members of the class.

77. The Court should award the Plan, Plaintiffs and the members of the class other equitable relief to address Defendants' past and ongoing breaches of their fiduciary duties.

### COUNT II - IMPROPER DENIAL OF BENEFITS

78. Plaintiffs incorporate all other paragraphs in this Complaint as though fully set forth herein.

79. This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

80. Defendants underpaid the claims submitted by Plaintiffs and other members of the Class based on an improper methodology for determining the amount to be paid under the Plan for out-of-network claims, contrary to the terms of the Plan.

81. Plaintiffs exhausted any and all appeals available to them under the Plan, such that they are entitled to bring this lawsuit on behalf of themselves and the Class.

82. Plaintiffs and members of the Class were harmed by Defendants' conduct.

83. Plaintiffs and members of the Class continue to be participants and beneficiaries of the plan, and therefore entitled to all appropriate relief under ERISA to prevent Defendants' use of the Medicare methodology when assessing out-of-network claims in violation of the terms of the Plan and their duties under ERISA.

## COUNT III - INJUNCTIVE AND DECLARATORY RELIEF

84. Plaintiffs incorporate all other paragraphs in this Complaint as though fully set forth herein.

85. This count is brought pursuant to 29 U.S.C. § 1132(a)(3).

86. Plaintiffs made Defendants aware that their agreement to administer out-of-network claims using a Medicare-based methodology violated the terms of the Plan.

87. Instead of changing their conduct to follow the terms of the Plan, Defendants refused to change and continued using Medicare's reimbursement rates to determine "reasonable" charges for out-of-network claims.

88. Defendants must be enjoined from their ongoing wrongful actions in violation of the terms of the Plan.

89. Plaintiff Brenten George continues to be a participant under the Plan, and Plaintiff Denise Valente-McGee continues to be a beneficiary under the Plan.

90. Plaintiffs seek all appropriate equitable relief, including but not limited to declaratory relief, to ensure that Defendants comply with their obligations under ERISA and

applicable law, together with any other supplemental relief necessary to redress the harm caused to Plaintiffs and other members of the Class.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs request judgment in their favor:

A. An order certifying the Class;

B. An order appointing Plaintiffs as class representatives for the Class;

C. An order designating O'Neil, Cannon, Hollman, DeJong & Laing S.C. and Tuffnell Law, S.C. as counsel for the Class;

D. An award of benefits due;

E. A permanent injunction requiring CNH and Anthem to cease the improper payment practices described herein and to comply with their obligations under ERISA and applicable law;

F. An order requiring Anthem or a substitute claims administrator to recalculate the out-of-network claims submitted under the Plan using an objective and fair methodology based on provider charges, such as Fair Health;

G. An order requiring CNH and the Plan to disgorge all amounts improperly kept, including interest and investment earnings, and to pay any underpaid amounts as determined after the recalculation of the out-of-network claims using a proper provider charge-based methodology;

H. An order requiring Anthem to pay an appropriate surcharge under principles of equity;

I. An order prohibiting Anthem or CNH from further serving as fiduciaries under the Plan and appointing successor fiduciaries;

J. An award of Plaintiffs' disbursements and expenses for this action, including reasonable attorney fees;

K. An award of taxable costs and interest from the date of initial improper benefit determination for all underpaid amounts;

L. Other and further relief that is determined to be equitable or otherwise just and proper under the circumstances presented by this case.

Dated: March 3, 2017.

**TUFFNELL LAW S.C.**
Attorneys for Plaintiffs Brenten George and Denise Valente-McGee


 /s/John B. Tuffnell
John B. Tuffnell
Wis Bar No. 1046542
788 N. Jefferson St., Suite 900
Milwaukee, WI 53202
jbt@tuff-law.com
(414) 550-2296

**O'NEIL CANNON HOLLMAN DEJONG & LAING S.C.**
Attorneys for Plaintiffs Brenten George and Denise Valente-McGee


 /s/ Douglas P. Dehler
Douglas Dehler
Wis Bar No.: 1000732
Christa Wittenberg
Wis Bar No.: 1096703
111 East Wisconsin Avenue, Suite 1400
Milwaukee, WI 53202
douglas.dehler@wilaw.com
christa.wittenberg@wilaw.com
(414) 276-5000