# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BRENTEN GEORGE and DENISE VALENTE-MCGEE,<br><br>                        Plaintiffs,<br>v.<br><br>CNH HEALTH & WELFARE BENEFIT PLAN, CNH EMPLOYEE GROUP INSURANCE PLAN, CASE NEW HOLLAND, INC., and BLUE CROSS BLUE SHIELD OF WISCONSIN,<br><br>                        Defendants. | Case No. 16-CV-1678-JPS<br><br><br>**ORDER** |

## 1.    INTRODUCTION

In this action, Plaintiffs allege that Defendants used improper payment methodology in processing health insurance claims on the employee benefit plans they manage, in violation of the Employee Retirement Income Security Act ("ERISA"). (Docket #1). On March 13, 2017, Defendants collectively moved for judgment on the pleadings. (Docket #22). Plaintiffs opposed the motion on March 31, 2017, and Defendants replied in support on April 14, 2017. (Docket #26 and #27). For the reasons explained below, the motion must be granted in part and denied in part.

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) permits a party to seek judgment once each side has filed its pleadings. Fed. R. Civ. P. 12(c). The Court reviews such motions

> by employing the same standard that applies when reviewing a motion to dismiss for failure to state a claim under [Fed. R. Civ. P.] 12(b)(6)[.] . . . Thus, we view the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.

*Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citations and quotations omitted). The Court must "draw all reasonable inferences and facts in favor of the nonmovant, but need not accept as true any legal assertions." *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016).

## 3. RELEVANT FACTS

The following facts are gleaned from viewing the factual allegations of the amended complaint in a light most favorable to Plaintiffs.[1] Plaintiff Brenten George ("George") is an employee of Defendant Case New Holland, Inc. ("CNH"). Plaintiff Denise Valente-McGee ("Valente-McGee") is the spouse of a retired CNH employee. Each is a beneficiary of Defendants CNH Health & Welfare Benefit Plan and the CNH Employee Group Insurance Plan, respectively (collectively, the "Plans"). CNH is the ERISA fiduciary for the Plans and Defendant Blue Cross Blue Shield of Wisconsin ("Anthem") is the claims administrator.

---

[1] All facts are drawn from the amended complaint (Docket #21) unless otherwise noted.

The Plans provide health insurance coverage to many participants, including Plaintiffs. The benefits provided depend on whether the participants seek coverage for services from an in-network medical provider or an out-of-network provider. If a provider is out-of-network, individual participants are personally responsible for paying any amounts not paid by the Plans. Thus, if a Plan improperly underpays claims for out-of-network services, the participant suffers because they must make up the difference.

For out-of-network providers, the Plans state that they will reimburse the participant for a percentage of "reasonable" charges. A "reasonable" charge is "[t]he charge for a service or a supply which is the lower of *the provider's usual charge or the prevailing charge in the geographic area* where it is furnished—as determined by the claims administrator. The claims administrator takes into account the complexity, degree of skill needed, type or specialty of the provider, range of services provided by a facility, and the prevailing charge in other areas." (Docket #21 at 5) (emphasis in original). Plaintiffs both claimed coverage for surgeries conducted by out-of-network providers. The Plans paid only about twenty percent of the total charges in each case because that was the amount they determined was "reasonable."

FAIR Health, Inc. ("FAIR") is a company that maintains a database on healthcare provider charges "to support the adjudication of healthcare claims and to promote sound decision-making by all participants in the healthcare industry." *Id.* at 6. FAIR was created as a result of the settlement of a lawsuit in 2009 involving Ingenix, a company which previously maintained a similar database. Ingenix was shut down because its database led to systematic underpayments on out-of-network claims.

FAIR's database, by contrast, is an objective, third-party source for determining average provider charges. Using FAIR's data, the prevailing charges for Plaintiffs' surgeries were more than double the amounts paid by the Plans.

Plaintiffs appealed their claims with Anthem. Anthem told Plaintiffs that CNH had directed it to use a methodology for out-of-network claims that was different than the above-quoted "prevailing charge" language. CNH had asked Anthem to set payments on out-of-network claims using a percentage of Medicare reimbursement rates.

Plaintiffs then appealed directly to the CNH and cited the FAIR data. CNH responded that with the shutdown of the old Ingenix database, it needed a new system to assess reasonable charges. Anthem had offered CNH two options: 1) use local network fees, or 2) use a percentage of the Medicare fee schedule. CNH chose the latter "because it most closely approximated the level of 'reasonable charges' as determined under the Ingenix database." *Id.* at 8.

Plaintiffs allege that this approach is contrary to the Plans' language. The Medicare reimbursement rates have no relationship to the prevailing charges by providers. The definition of "reasonable" charges quoted above was never amended to reflect CNH's new methodology. Further, despite the elimination of Ingenix's flawed database, CNH nevertheless tried to approximate the reasonable charges determinations that had been founded on that database. Rather than using the Medicare reimbursement rates, CNH could have simply used the new FAIR database.

Plaintiffs informed CNH that they believed its out-of-network payment methodology was improper. CNH nevertheless issued a final

determination upholding its payments on Plaintiffs' claims. Plaintiffs allege that CNH and Anthem knowingly and systematically used their improper methodology to the detriment of all Plan participants who sought out-of-network services. Plaintiffs seek certification of a class of these persons.

Plaintiffs' claims are presented in three counts. The first count is for "violation of fiduciary obligations" pursuant to 29 U.S.C. § 1132(a)(2) and (3). *Id.* at 12. Count One states that CNH and Anthem violated their duties as ERISA fiduciaries by implementing their improper claim payment scheme, which attempted to save them money by underpaying out-of-network claims. Plaintiffs' second count is for "improper denial of benefits" pursuant to Section 1132(a)(1)(B). *Id.* at 13. Count Two asserts the straightforward claim that Defendants wrongfully denied Plaintiffs the full benefits to which they were entitled under the Plans. The final count is for injunctive and declaratory relief pursuant to Section 1132(a)(3) to stop Defendants' allegedly unlawful payment practices. Plaintiffs pray for, *inter alia*, "an award of benefits due," an injunction against CNH and Anthem to cease their current payment practice, disgorgement of all amounts Defendants improperly withheld, assessment of "an appropriate surcharge under principles of equity" against Anthem, and removal of Anthem and CNH as fiduciaries of the Plans. *Id.* at 15.

4. **ANALYSIS**

    4.1 **Duplicative Claims**

Defendants' primary argument is that Plaintiffs attempt to obtain redress three times for one injury. According to Defendants, the sole basis for Plaintiffs' complaint is the underpayment of benefits. The remedy for this injury is contained in Section 1132(a)(1)(B), which allows plan

beneficiaries to sue "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In this regard, Defendants take no issue with Count Two, which asserts such a claim.

However, Defendants object to Counts One and Three, which seek injunctive and declaratory relief for the same underlying injury. Those counts are brought pursuant to Section 1132(a)(2) and (3). Section 1132(a)(2) permits beneficiaries to seek relief on behalf of a plan if the plan fiduciaries violated their duties to the plan. *Id.* §§ 1109(a), 1132(a)(2). This can include making good any losses to the plan, restoring any profits to the plan which were made through the fiduciary's improper use of plan assets, and "other equitable . . . relief as the court may deem appropriate," including removal of a fiduciary. *Id.* § 1109(a). Section 1132(a)(3) is a catch-all which allows beneficiaries to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id.* § 1132(a)(3).

Defendants maintain that if relief is available to Plaintiffs under Section 1132(a)(1)(B), they are precluded from bringing additional claims for relief under Sections 1132(a)(2) and (3). They primarily rely on the Supreme Court's *Varity* opinion, which held that when beneficiaries can obtain adequate monetary relief under Section 1132(a)(1)(B), the equitable relief available under Section 1132(a)(3) would not be "appropriate," as that Section requires. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). When the Seventh Circuit considered the issue in the *Mondry* case, it agreed with

"a majority of the circuits [which] are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un*available under subsection (a)(3)." *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) (emphasis in original). As Defendants put it, a claim for denial of benefits may not be "repackaged" as one for breach of fiduciary duty or seeking equitable relief. (Docket #23 at 9).

Plaintiffs respond that they are entitled to bring alternative claims and seek alternative remedies for Defendants' wrongful scheme. Section 1132(a)(1)(B) claims are for recovering unpaid benefits, and must be brought against the ERISA-governed plan, not a plan fiduciary. *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013). Count Two is thus directed at the Plans themselves. Plaintiffs explain that they "join this claim with the breach of fiduciary duty claim because it arises from the same series of transactions and a common core of facts." (Docket #26 at 8). Section 1132(a)(2) claims are directed at the fiduciary themselves for breach of their duties. Plaintiffs state that Anthem and CNH did not "meet the loyalty, prudence, and competence standards ERISA imposes on fiduciaries," and so Count One seeks various forms of equitable relief, including their removal as fiduciaries. Finally, Section 1132(a)(3) acts as a catch-all for equitable relief to redress any injuries not remedied by the other Sections. Count Three supports Plaintiffs' requests for disgorgement of profits, a surcharge, and an injunction against continuing to use the improper payment methodology. Plaintiffs maintain that this relief is not available under Section 1132(a)(1)(B).

Plaintiffs argue that at the pleading stage, the potential for overlapping remedies is not a basis for dismissal. *Varity* and *Mondry* dealt with cases beyond the pleading stage, Plaintiffs contend, and so their

holdings merely state the unremarkable proposition that a party cannot double-recover for one injury. The Supreme Court's *Amara* opinion, issued after *Varity* and *Mondry*, allowed for the imposition of equitable relief under Section 1132(a)(3), even that which appears monetary, if Section 1132(a)(1)(B) does not permit such relief. *CIGNA Corp. v. Amara*, 563 U.S. 421, 435-442 (2011).[2] Various circuit courts have opined, since *Amara*, that pleading claims under both sections simultaneously is permissible, again with the caveat that a plaintiff cannot use the guise of equitable relief to obtain duplicative remedies for a single injury. *Moyle v. Liberty Mut. Ret. Benefits Plan*, 823 F.3d 948, 959-62 (9th Cir. 2016); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014); *cf. Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 370 (6th Cir. 2015) (an individual plaintiff cannot recover under both Sections for one injury, namely the arbitrary and capricious denial of benefits).

Defendants reply that even at this early stage, Plaintiffs' complaint confirms that they have only one injury—the denial of benefits. This can be remedied by Count Two, making Counts One and Three duplicative. Defendants argue that Plaintiffs' equitable claims for disgorgement or removal of fiduciaries are simple re-labelings of the same relief for that injury.

---

[2] One form of equitable relief involving the payment of money is "surcharge," which Plaintiffs plead here. *Amara* observed that "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. . . . [This] surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Amara*, 563 U.S. at 441-42; *see also Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 878-79 (7th Cir. 2013).

In light of recent precedent from various Courts of Appeals, the Court must agree with Plaintiffs that dismissal is inappropriate on this ground. The Ninth Circuit explained *Varity*'s precise holding in this way:

> In *Varity*, plaintiffs sought relief under ERISA § 409(a), 29 U.S.C. § 1109(a), which authorizes recovery to benefit plans for breaches of fiduciary duty. *Varity*, 516 U.S. at 508–09, 116 S.Ct. 1065. The *Varity* court found that § 1109(a) provided relief only for benefit plans and not individuals, but held that § 1132(a)(3) could provide individualized relief. *Id.* at 509–12, 515, 116 S.Ct. 1065. Thus, a key holding in *Varity* was that § 1132(a)(3) extends to other sections of the statute, even when § 1132 does not expressly provide a remedy for those sections. *Varity* did not explicitly prohibit a plaintiff from pursuing simultaneous claims under § 1132(a)(1)(B) and § 1132(a)(3).

*Moyle*, 823 F.3d at 960-61. The Eighth Circuit applied this holding to a case like ours, where the defendant accused the plaintiff of seeking duplicative remedies:

> Contrary to Defendants' argument, *Varity* does not limit the number of ways a party can initially seek relief at the motion to dismiss stage. The case *Black v. Long Term Disability Insurance* summarizes our views well:
>
> > *Varity Corp.* does not hold that when an ERISA plaintiff alleges facts supporting both a § 1132(a)(1)(B) and a § 1132(a)(3) claim, a court must or should grant a defendant's Rule 12(b)(6) motion to dismiss the latter claim. *Varity Corp.* did not deal with pleading but rather with relief....
> > Further, nothing in *Varity Corp.* overrules federal pleading rules. And, under such rules, a plaintiff may plead claims hypothetically or alternatively. To dismiss an ERISA plaintiff's § 1132(a)(3) claim as duplicative at the pleading stage of a case would, in effect, require the plaintiff to elect a legal theory and would, therefore, violate [the Federal Rules of Civil Procedure].

373 F.Supp.2d 897, 902–03 (E.D. Wis. 2005) (internal citations omitted).

*Silva*, 762 F.3d at 726. Plaintiffs are entitled to plead alternative theories of recovery at this early stage of the lawsuit. If more than one theory is ultimately successful, the Second Circuit teaches that the Court must then carefully consider whether the available remedies are inappropriately duplicative. *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Group*, 798 F.3d 125, 134 (2d. Cir. 2015) ("[W]e have instructed [that] if a plaintiff succeed[s] on both claims . . . the district court's *remedy* is limited to such equitable relief as is considered appropriate.") (quotation omitted).

Defendants' citations to the contrary are either to district court opinions, which this Court finds less persuasive than circuit authority, or they are distinguishable. *See, e.g.*, *Rochow*, 780 F.3d at 370-76; *Roque v. Roofers' Unions Welfare Trust Fund*, 12-C-3788, 2013 WL 2242455, at *5-9 (N.D. Ill. May 21, 2013).[3] For instance, *Rochow* did not permit the plaintiff

---

[3]*Roque*, an example of one of the numerous district court opinions on this issue arising from the Northern District of Illinois, is distinguishable and provides a helpful contrast to the instant case. There, the plaintiff requested the following relief:

> In Count I, Roque invokes section § 502(a)(1)(B) and requests monetary relief in the form of all past due benefits on his claims for his second surgery. . . . In Counts III, IV, and V, Roque relies on § 502(a)(3) and seeks monetary relief "in an amount equal to the cost of services Roque incurred because of the breaches of fiduciary duty."

*Roque*, 2013 WL 2242455, at *7 (Section "502" is the pre-enactment title of Section 1132). The court held that "the monetary relief that Roque seeks for his § 502(a)(3) claims is the same relief he seeks for his § 502(a)(1)(B) claim." *Id.* The court further explained:

to pursue a Section 1132(a)(3) remedy because it represented a "repackaging" of a Section 1132(a)(1)(B) claim. *Rochow*, 780 F.3d at 375. *Moyle*, however, noted *Rochow*'s key factual distinction: "[t]he plaintiff in *Rochow* had already received his remedy under § 1132(a)(1)(B)[.]" *Moyle*, 823 F.3d at 961. The *Rochow* opinion cited here was actually the second appellate opinion in that case. The first appellate decision affirmed the plaintiff's award of benefits made pursuant to Section 1132(a)(1)(B). *Rochow*, 780 F.3d at 370. The second *Rochow* opinion addressed whether the plaintiff could also seek disgorgement of profits pursuant to Section 1132(a)(3) for the same wrongful denial of benefits that underlay the earlier recovery. *Id. Moyle* found that "the [*Rochow*] court essentially enjoined [the plaintiff's] § 1132(a)(3) claim, because, if successful, it would result in a double recovery for the same injury." *Moyle*, 823 F.3d at 961.

*Rochow* is thus entirely consistent with the fundamental fault in Defendants' motion: the Court cannot state with certainty the ultimate nature of Plaintiffs' injuries or the appropriateness of any particular remedy at this time. *Silva* observed that "[a]t the motion to dismiss stage, . . . it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative,

---

> By arguing that he seeks monetary relief for the cost of the surgery as a remedy for the breaches of fiduciary duty, Roque makes clear that he is, though under a different label, seeking the same relief sought for his denial-of-benefits claim, namely the costs of the second surgery.

*Id.* at *8. Unlike *Roque,* Plaintiffs do not seek purely monetary relief for the same injury under different theories. Rather, their plea for equitable relief includes removal of CNH and Anthem as fiduciaries, disgorgement of profits arising from the benefits those fiduciaries did not properly pay, and a surcharge to address other possible unjust enrichment afforded to CNH and Anthem.

and determine if one or both could provide adequate relief." *Silva*, 762 F.3d at 727 (citing *Black*, 373 F. Supp. 2d at 901-02). By contrast, when an action reaches the summary judgment stage, "a court is better equipped to assess the likelihood for duplicate recovery, analyze the overlap between claims, and determine whether one claim alone will provide the plaintiff with 'adequate relief.'" *Id.* Put another way, Plaintiffs' "[Section 1132](a)(3) claims are for breach of fiduciary duty, [they] ha[ve] not yet succeeded on [their] [Section 1132](a)(1)(B) claim, and it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under [Section 1132](a)(1)(B) alone will provide [them] a sufficient remedy. In other words, it is too early to tell if [their] claims under [Section 1132](a)(3) are in effect repackaged claims under [Section 1132] (a)(1)(B)." *N.Y. State Psychiatric Ass'n*, 798 F.3d at 134. Unlike the *Rochow* plaintiff, Plaintiffs here have not succeeded on their Section 1132(a)(1)(B) claim, and it is not clear whether their injuries and remedies are truly coterminous.

The Seventh Circuit has not weighed in on the issue of duplicative remedies at the pleadings stage. *Mondry* was decided on summary judgment and made no mention of pleading. *Mondry*, 557 F.3d at 803-06. Other post-*Amara* opinions are of limited assistance. *Kenseth* noted that *Amara* broadened the forms of equitable relief available under Section 1132(a)(3) for a breach of fiduciary duty, including "make-whole money damages[,] . . . if [the plaintiff] can in fact demonstrate that [the fiduciary] breached its fiduciary duty to her and that the breach caused her damages." *Kenseth*, 722 F.3d at 880. *Sumpter* confirmed that "a denial of benefits, without more, does not constitute a breach of fiduciary duty that can be remedied under the equitable-relief provision." *Sumpter v. Metro. Life Ins. Co.*, No. 16-2012, 2017 WL 1379191, at *2 (7th Cir. Apr. 18, 2017). It

further cited *Rochow* for its prohibition on "repackaging," noting that "[t]o the extent that Sumpter's claims for breach of a fiduciary duty are not his wrongful-denial claim by another name, they are frivolous." *Id.* at *3.

While not directly on-point, these rulings are not inconsistent with the position of the other Circuits on the pleading issue. *Kenseth* allows Plaintiffs to seek monetary relief in equity under Section 1132(a)(3), even that which appears identical to what they may recover under Section 1132(a)(1)(B). *Sumpter*, though addressing a *pro se* case which the court described as frivolous, confirms that "repackaging" is impermissible. When and if it comes time to determine Plaintiffs' remedies in this matter, the Court will be aware (and the Defendants will no doubt remind it) of the "repackaging" principle. As of today, however, the Court must agree with *Moyle*, *Silva*, and *New York State Psychiatric Association*, and deny Defendants' motion as it relates to duplicative claims.

### 4.2 Failure to Allege Injury to the Plans

Defendants' motion presents a secondary argument for dismissal of Count One. They contend that the amended complaint seeks relief for Plaintiffs and the proposed class, not the Plans, in contravention of Section 1132(a)(2)'s requirements. *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 481-82 (7th Cir. 2010) ("Pursuant to section 1132(a)(2), a plan participant or beneficiary (among others) may commence a civil action for appropriate relief under section 1109(a), but she may do so only in a representative capacity on behalf of the plan, not in her own behalf."); 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good **to such plan** any losses to the plan resulting from each such breach[.]") (emphasis added).

Plaintiffs' entire opposition to this argument is found in two sentences. First, they state that "[t]he language of the statute does not limit recovery only 'for the plan,' but to the extent that is required, removal of a fiduciary can be relief 'for the plan.'" (Docket #26 at 7). Plaintiffs further opine that "[they] are entitled to bring this breach of fiduciary duty claim under § 1132(a)(2) or (a)(3), depending on whether harm to the Plan as a whole is proven, or just harm to the individual beneficiaries of the Plan." *Id.* at 8. Neither sentence is supported by citation to any authority. This is woefully inadequate to resist Defendants' request for dismissal. *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."); *see also John v. Barron*, 897 F.2d 1387, 1393 (7th Cir. 1990) ("This court is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel as in this case."); *Gold v. Wolpert*, 876 F.2d 1327, 1333 (7th Cir. 1989).

Without meaningful argument to the contrary, the Court agrees with Defendants that the amended complaint fails to allege any injury to the Plans. Its allegations are directed at unpaid benefits to Plaintiffs and the prospective class members. (Docket #21 at 2) ("Defendants knowingly and systematically used an improper payment methodology . . . in violation of their fiduciary obligations to Plaintiffs and all other participants and beneficiaries of the benefit plans sponsored by CNH."); *id*. at 13 ("Defendants favored their own financial interests over the rights and interests of the members of the Class, who are entitled to payment of out-of-network claims based on a prevailing provider charge methodology. . . . Plaintiffs and members of the class were harmed by Defendants' breaches of fiduciary duty and are entitled to appropriate

equitable relief."). By failing to allege an injury to the Plans themselves, Plaintiffs cannot proceed on a Section 1132(a)(2) claim.

One final problem remains: Defendants' request for dismissal of Count One is inconsistent. Recall that Count One is advanced not only pursuant to Section 1132(a)(2), but also Section 1132(a)(3). *See supra* at 5. In their opening brief, Defendants state that "Plaintiffs' § 1132(a)(2) [claim] in Count I fails to state a claim under that subsection." (Docket #23 at 16). They go further in their reply brief, asking that the Court dismiss Count One completely. (Docket #27 at 11). The Court finds it prudent to grant the more limited form of dismissal. It will, therefore, strike Section 1132(a)(2) as a basis for Count One, leaving the count intact as to Section 1132(a)(3). If Count One is now duplicative of Count Three (also brought under Section 1132(a)(3)), Plaintiffs should stipulate to dismissal of one of those counts.

## 5. CONCLUSION

In light of the foregoing, the Court will deny Defendants' request to dismiss Counts One and Three as duplicative. The Court will, however, grant Defendants' motion as it pertains to the Section 1132(a)(2) claim contained in Count One.

Accordingly,

**IT IS ORDERED** that Defendants' motion for judgment on the pleadings (Docket #22) be and the same is hereby **GRANTED in part** and **DENIED in part**; and

**IT IS FURTHER ORDERED** that the 29 U.S.C. § 1132(a)(2) claim alleged in Count One of the amended complaint (Docket #21 at 12-13) be and the same is hereby **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 22nd day of May, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge